DECISION
Six separate actions are before the Court wherein the Petitioners request modification of the separate trust agreements, created by members of the Goddard family. The Petitioners list themselves as "all known or unascertained beneficiaries of [the] Trusts." (Petitioner's Mem. of December 2009.) While the individual actions have not been consolidated, the cases are consolidated for purposes of this Decision.
Although the Settlors are deceased, the Petitioners seek modification of the trust documents to "(1) modernize the investment portions of these Trusts by creating greater flexibility . . ., and (2) create consistency in the oversight and management." (December Mem. p. 2.)[1] Petitioners also seek approval of Trustees' accountings, and an order establishing that the interests of the minor beneficiaries were protected by their parents' waivers. At the same time, the Corporate Trustee, Bank of America, requests that the Court approve numerous accounts.
While Petitioners' December memorandum provides scant information on the scope of the amendments requested, the actual proposed language requested is quite broad. Petitioners later produced a bound volume containing the present trust language and the proposed *Page 3 
language.[2] On January 21, 2010, Petitioners submitted a separate memorandum in support of the trust modifications. On January 22, the Corporate Trustee submitted a separate memorandum in support of the Petitioners' request to approve the accountings.
The actual proposed trust amendments go beyond what is referenced in the original petition or memoranda. Specifically, the amendments attempt to:
 • establish an investment committee to make financial decisions. (Exhibit I, tab A5, p. 24.)
 • limit liability from the trustees if they rely on decisions of the investment counselor. (Exhibit I, tab A5, p. 25.)
 • allow the committee to move the trust assets. (Exhibit I, tab A5, p. 30; tab C2, p. 14.)
 • allow the committee to change the jurisdiction of the trusts. (Exhibit I, tab A5, p. 30; tab C2, p. 14)
 • allow the committee to remove a trustee for any reason. (Exhibit I, tab A5, p. 30)
 • allow the committee to amend the trust terms, apparently without further Court approval. (Exhibit I, tab A5, p. 30; tab C2, p. 14)
 • remove liability and responsibility of any trustee for a financial decision if he or she votes against the decision. (Exhibit I, tab B3, unnumbered p. 33.)
 • centralize power to select the investment committee in the senior generations of the family. (Exhibit I, tab A5, p. 27, 28.)
 • remove investment responsibility from certain trustees. (Exhibit I, tab C2, p. 13-14.)[3] *Page 4 
While several of the trusts were created by trust indentures, three of the trusts are explicitly set forth in Last Wills and Testaments.
The Petitioners and the Corporate Trustee suggested that the Court amend the trusts and approve the accounts based on assents of the beneficiaries without a guardian ad litem.
 ANALYSIS
A trust is an important tool in the law. As its very name implies, a trust segregates some wealth to protect it for an intended purpose. It is commonly defined as
 A fiduciary relationship regarding property and subjecting the person with title to the property to equitable duties to deal with it for another's benefit; the confidence placed in a trustee, together with the trustee's obligations toward the property and the beneficiary. Black's Law Dictionary
513 (7th ed.)
Such a significant tool of the law should not be forsaken without considerable deliberation. As Justice Holmes noted "The trust is not a metaphysical entity or a Prince Rupert's drop which flies to pieces if broken in any part." Landram v. Jordan,203 U.S. 56, 63 (1906).
Petitioners suggest two alternative methods to modify the trust, now that the Settlors of the irrevocable trusts have passed away.
 Inconsistency with a Material Purpose.
First, the Petitioners suggest the Court employ theRestatement (Third) of Trusts, § 65(b) which provides:
 § 65. Termination or Modification by Consent of Beneficiaries
 (1) Except as stated in Subsection (2), if all of the beneficiaries of an irrevocable trust consent, they can compel the termination or modification of the trust.
 (2) If termination or modification of the trust under Subsection (1) would be inconsistent with a material purpose of the trust, the *Page 5 
beneficiaries cannot compel its termination or modification except with the consent of the settlor or, after the settler's death, with authorization of the court if it determines that the reason(s) for termination or modification outweigh the material purpose.
This allows a trust modification if the beneficiaries agree, [4]
and if a material purpose of a trust is not affected. If the modification is to a material purpose, not only must the beneficiaries agree, but the Court must approve after finding that the "reason(s) for . . . modification outweigh the material purpose."
By seeking permission under Restatement (Third) ofTrusts, § 65(2), the Petitioners acknowledge that a material purpose is at issue. Otherwise, the consenting beneficiaries would be able to amend the trusts, without Court review, pursuant to § 65(1). Therefore, the Court begins its analysis by considering the material purpose in controversy.
A comment to Restatement § 65 notes the difficulty in determining the material purposes of a trust:
 Occasionally, a settlor expressly states in the will, trust agreement, or declaration of trust that a specific purpose is the primary purpose or a material purpose of the trust. Otherwise, the identification and weighing of purposes under this Section frequently involve a relatively subjective process of interpretation and application of judgment to a particular situation. . . . Restatement (Third) of Trusts, § 65, comment d.
Petitioners' memorandum at page 6 says that the trusts' purposes are "not expressly stated" and suggests three general purposes which are "all common and reasonable estate planning tools." Claiming that three common purposes were the goal of these Settlors does not hold muster. The Court will not infer general goals of other trusts as the specific goals of these *Page 6 
particular trusts. Clearly, the Goddard Trusts have distinct and important purposes. Instead, the Court should begin by studying plain words of the written trust agreement, executed by the person who funded and established the trust. The Court should also consider any other evidence which may establish the Settlor's purposes. As the Restatement comment instructs:
 Material purposes are not readily to be inferred. A finding of such a purpose generally requires some showing of a particular concern or objective on the part of the settlor, such as concern with regard to a beneficiary's management skills, judgment, or level of maturity. Thus, a court may look for some circumstantial or other evidence indicating that the trust arrangement represented to the settlor more than a method of allocating the benefits of property among multiple intended beneficiaries, or a means of offering to the beneficiaries (but not imposing on them) a particular advantage. Sometimes, of course, the very nature or design of a trust suggests its protective nature or some other material purpose.
Hence, a court should make a serious, focused inquiry before considering any modifications, and the petitioners bear the burden of showing the settlors' intent.
Having reviewed the language of the various trusts, this Court is unable to distinguish specific material purposes. Clearly, the Settlors were explicit in regard to the distributions of principal and interest, but there is no request that any distributions be amended. The Settlors inserted precise guidelines regarding the appointment and succession of trustees, and defined their powers at length. While much of this language may be customary language for such a trust, the Court is unable to conclude that any material purpose is outweighed by the changes, or that the provisions were not primary purposes specifically designed by the Settlors.
For example, given the age and the language of the various trust instruments, the trusts have apparently achieved success in transferring at least some of the assets through various generations of the family.[5] This appears to have resulted from the use of wills, indentures, joint indentures, powers of appointment and other sophisticated estate planning tools. The Court *Page 7 
cannot therefore conclude that generational preservation was a material purpose of the trust instruments. The purposes of the trusts are not expressly enumerated within the documents, nor was any evidence (circumstantial or direct) submitted to the Court in support of the motion.[6]
Petitioners specifically request that the Court approve the new method of appointment of Trustees, and other amendments. Their memorandum explains
 [T]he requested modifications . . . would (1) modernize the investment portions of these Trusts by creating greater flexibility in the oversight and management of investment assets and (2) create consistency throughout the Trust documents for purposes of providing . . . greater certainty and predictability regarding future management.
 * * * [T]his would be accomplished, in significant part, by (1) the creation of a committee, to include designated members of the Goddard Family . . . to represent the family's overall interests, to oversee and manage financial issues, including the selection of investment advisors and any institutional Trustee(s); and (2) the power to change the jurisdiction or situs of the Trusts. . . . (Petitioner's Mem. December 2009, pp. 2, 10, 11.)
As noted, the proposed amendments do much more. Amendments provide that certain Trustees may rely completely on decisions of other Trustees, or decisions of investment counselors. They insulate trustees from liability on certain occasions, and limit the responsibility of certain Trustees from making investment decisions. For one trust, an investment committee is appointed, and that committee is empowered to move the trust corpus and even amend provisions of the trust. (Exhibit I, tab A5, pp. 25-32.) Trustees' powers are expanded beyond those which were explicitly set forth in the trust agreements.[7] In sum, the amendments are *Page 8 
sweeping, drastically different from original terms, and not necessarily tailored to the guidelines set forth in the original instruments. The parties have not established that the amendments are consistent with the material purpose, or any purpose, of the trusts. As the Court cannot determine that these substantial modifications outweigh the material purpose, it may not grant recovery under Restatement (Third) ofTrusts, § 65.
Even if the Court could make such a finding, the Court has discretion in allowing a modification. Restatement § 65(2) does not allow the trustees to "compel modification" as does § 65(1). Section 65(2) speaks of court "authorization" only, which necessarily involves an independent determination of whether an amendment should be allowed. Where Petitioners ask to amend such a significant body of trust documents substantially, the Court is reluctant to afford its discretion.
 Amendment for Unanticipated Circumstances.
Alternatively, Petitioners suggest that the trusts may be modified pursuant to Restatement (Third) of Trusts § 66 which provides:
 Power of Court to Modify: Unanticipated Circumstances.
 (1) The court may modify an administrative or distributive provision of a trust, or direct or permit the trustee to deviate from an administrative or distributive provision, if because of circumstances not anticipated by the settlor the modification or deviation will further the purposes of the trust.
 (2) If a trustee knows or should know of circumstances that justify judicial action under Subsection (1) with respect to an administrative provision, and of the potential of those circumstances to cause substantial harm to the trust or its beneficiaries, the trustee has a duty to petition the court for *Page 9 
appropriate modification of or deviation from the terms of the trust.
Pivotal in allowing for a modification under this section is an unanticipated change of circumstances. The Petitioners list the mergers of Rhode Island Hospital Trust Bank, the Trustee Bank, and "best practices in the investment world have changed significantly." (Petitioner's Mem. p. 9.) The Petitioners did not demonstrate the mergers changes were unanticipated. While the Goddard family was, and is, experienced in the financial world, they were actively involved with the Hospital Trust Bank[8], and may have desired their funds stay with the bank or its successors in interest. In the same, their familiarity with the financial world would infer that they knew banks were evolving as were their investment strategies. Still, even for the trust established in 1996, Hospital Trust is a named Trustee.
The Petitioners do not necessarily desire to change the Trustee, only the method of selecting the institutional Trustee, the powers of all of the Trustees, and the insulation of liability of the Trustees relative to a newly established investment committee. The petitioners have shown that the circumstances are either unanticipated or changed.[9] For these reasons and in the exercise of its discretion the Court denies the motion to modify pursuant toRestatement (Third) of Trusts, § 66.
 The Proposed Trust Accountings.
The Bank of Boston moves the Court for approval of an accounting. Such an accounting is allowed by the General Laws: *Page 10 
 § 18-6-3. Application for allowance of accounts. — A trustee may apply to the superior court for the allowance of his or her account or accounts.
 § 18-6-6. Allowance or disallowance of accounts. — Upon the hearing, the court may allow or disallow the account or accounts in whole or in part and may make any orders and decrees in relation to the account or accounts that justice may require, and after a final decree has been entered on any account under this section, it shall not be impeached except for fraud or manifest error.
The language of the General Laws is discretionary. That is, the Court may approve an account, or may not decide to so. It is also discretionary on the part of the trustees. They are not obligated to seek periodic reviews of accounts for trusts. See Petition ofStatter, 108 R.I. 326, 275 A.2d 272, n. 5 (R.I. 1971).
The significance of an account cannot be understated. Comment c toRestatement (Third) of Trusts, § 83 states:
 c. Effect of report or accounting; adequate disclosure. With respect to beneficiaries who are properly made parties to a judicial proceeding, a court order approving all or part of a trustee's accounts discharges the trustee from liability (or further liability) for matters appropriately disclosed. Because a trustee has an affirmative duty to disclose relevant information, a matter involving sensitive issues must be revealed in the accounting with sufficient clarity to invite attention to the issue if the court order is to protect the trustee as a matter of issue preclusion.
As a commentator noted
 Thus, judicial approval generally bars the beneficiaries from subsequently surcharging the trustee with respect to anything that is within the scope of the accounting. Of course, a trustee who in rendering the account is guilty of fraud or fraudulent concealment is not protected. Scott and Archer on Trusts, Fourth Edition, § 1.1, Vol. 1, p. 4. (2006), footnotes omitted.
Given the tremendous significance of an account approval, the Court should approach an accounting guardedly and mindful of its substantial role. *Page 11 
Here, the accounts are substantial. The bank requests that the accounts of five distinct trusts be approved. Each account would span 40 years of transactions, and two of the accounts span 54 years! Presumably, the transactions are substantial, technical and complex. The suggestion that the Court should perform this task without outside assistance (not even knowing the complexity of the accounts) was inappropriate.
Bogert on Trusts provides this Court with guidance as to how it should approach an account:
 [For an account] the burden is on the trustee to justify it. The beneficiary does not have the burden of proving that the item should be disallowed. . . . The trustee should present vouchers or receipts for all payments which he claims he has made, but if satisfactory proof of the payments is made otherwise by the presentation of a voucher, the claim may be allowed. Where no voucher is presented and the charge seems questionable, the trustee may not be allowed the amount. Obscurities and doubts will be resolved against the trustee. George T. Bogert, Law of Trusts, § 143, p. 502 (6th ed. 1987).
Indeed, the commentator was critical of a condensed process, used by some states: "These reports are often so condensed and abbreviated that it is doubtful whether they can be fully comprehended by the ordinary layman." (Id. at 504.)
The Court will not treat an accounting as a perfunctory or ministerial function — approval of an accounting is a procedure of major consequence. Anticipating that the accounts are extensive and may involve technical expertise, the Court reserves its right to appoint an independent examiner or to retain assistants for the accounting, and to charge the trust for this cost. As counsel urged the Court to approve the accounting without an extensive examination, the trust may not be anticipating such a procedure or expense. Therefore, the Court will defer on the order for an accounting, pending submission of a writing from the trustees that the trust will agree to incur this additional expense. *Page 12 
 CONCLUSION
The Petitioners' motions to modify the trusts are denied. The Petitioners' motions for an accounting is passed. In order for the Court to consider an accounting, the Petitioner must submit to the Court the proposed accounts and access to the backup material. Notice is given that if an accounting is to be completed by the Court, the trust may incur the costs of court-appointed examiners, guardians ad litem, and other costs.
[1] At the initial hearing of December 10, 2009, Petitioners had not even submitted the complete trust documents as they presently exist. The complete trusts and the proposed modifications were submitted after the Court expressed its concern.
[2] To ensure that this binder is a part of the record, the Court marks it as Court's Exhibit I in file number PC 09-6232.
[3] As there are several Trusts proposed to be amended, it is probable that similar amendments appear throughout the proposals.
[4] While not all beneficiaries have executed consents to date, the moving party has obtained consents from almost all adult beneficiaries and has offered to obtain consents from all beneficiaries before final approval of the Court. The Restatement's Comment on subsection 1 notes the need for consent, even from those who lack capacity. Rather than appointing any guardian ad litem herein, counsel are quick to note the provisions of R.I.G.L. 1956 § 18-4-30 could avoid the need to appoint a guardian ad litem, if the parents' interests are identical to their progeny.
[5] The Court is not familiar with the present or past value of the trusts.
[6] Comment e states in part: "[I]f . . . the terms of the trust provide support or other discretionary benefits for some or all of the beneficiaries (see § 50), this may supply some indication that the settlor had a material purpose — a protective purpose — that would be inconsistent with allowing the beneficiaries to terminate the trust." Hence, it may also be inconsistent with allowing the beneficiaries to amend the trust.
[7] As this Court held before: The trust instrument in controversy is styled as an irrevocable trust. It is a cardinal principle of law that unless a settlor reserves the power to modify a trust, the trust cannot be modified either as to dispositive or administrative provisions. Restatement Trusts § 992. Even when the settlor does reserve such a power he or she can revoke it only in the particular manner stated, and the same principles are applicable to the modification of a trust as are applicable to its revocation. 3 Scott on Trusts §§ 330.8, 331; cited byUnion Trust Co. v. Watson, 76 R.I. 223, 68 A.2d 916 (1949).Carrellas v. Carrellas,2001 WL 34094252, *2 (R.I. Super 2001).
[8] The Obituary for Robert H. I. Goddard in The ProvidenceJournal on May 7, 2003 lists him as a senior partner in an investment firm, the husband of Hope Linton (Drury) Goddard, a trustee of "the former Rhode Island Hospital Trust Co., where he served on the trust committee for 22 years and the executive committee for 23 years." By the time of his passing, Hospital Trust had already merged.
[9] Frankly, if Mr. or Mrs. Goddard desired to insulate the corporate trustees from liability, they could have done so. It is likely that they were quite familiar with the roles and duties of fiduciaries. To change the method of selecting trustees, insulate others from liability for the investment strategies or select a new method of governance or investment as it may be a new practice, is well beyond the intent of the Restatement language.